**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION**

**CIVIL ACTION NO. 1:13-CV-00005-JHM-HBB**

**DAVID ALEXANDER MOORE**                                                                   **PLAINTIFF**

**V.**

**LOWE'S COMPANIES, INC.,
LOWE'S HOME CENTERS, INC.,
L.G. SOURCING, INC., REXON
INDUSTRIAL CORP. and POWER
TOOL SPECIALISTS, INC.**                                      **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendant Rexon's Motion to Quash Summons and/or Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12 [DN 12]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendant Rexon's motion is **DENIED**.

**I. BACKGROUND**

Plaintiff, David Alexander Moore, alleges that he was injured on January 22, 2012 while he was using a Task Force brand table saw, Model No. BT2500W, Item No. 229647, sold by Defendant Lowe's Home Centers and manufactured by Defendant Rexon. Plaintiff asserts that his injury would have been avoided had Defendants incorporated "available safety technology" into the saw. (Compl. [DN 1] ¶¶ 10, 16.) Plaintiff alleges that Defendant Rexon "designed, manufactured, sold, distributed, promoted, and placed into the stream of commerce in Kentucky numerous power tools," including the particular Task Force brand table saw that is the subject of this action. (Id. ¶¶ 7, 10.)

According to Plaintiff's complaint, Rexon "is a foreign corporation maintaining its principal place of business in Taoyuan, Taiwan," and it can be served "through its U.S. subsidiary, Power Tool Specialists, Inc." (Id. ¶ 5.) Plaintiff lists Power Tool Specialists, Inc. ("PTS") as a

Massachusetts corporation with its principal place of business in South Carolina. (Id. ¶ 6.) After the complaint was filed, Plaintiff attempted service upon Rexon through Kentucky's Office of the Secretary of State. On January 16, 2013, the Secretary of State sent Plaintiff's summons and complaint for Rexon, via certified mail, to the address identified as PTS's principal place of business. (See Proof of Serv. [DN 12-1].) Rexon has now moved to quash the summons and/or dismiss Plaintiff's complaint for insufficient process or insufficient service of process under Federal Rule of Civil Procedure 12.[1]

## II. DISCUSSION

Rules 12(b)(4) and 12(b)(5) address departures from the proper procedures for serving the summons and the complaint, and the contents of the former. See Fed. R. Civ. P. 12(b)(4), 12(b)(5). A Rule 12(b)(4) motion "concerns the form of process rather than the manner or method of service . . . [and] is proper only to challenge non-compliance with the provisions of Rule 4." Ericson v. Pollack, 110 F. Supp. 2d 582, 584 (E.D. Mich. 2000) (internal citations omitted). By contrast, a Rule 12(b)(5) motion challenges the mode of serving the summons and complaint. Nafziger v. McDermott Inter'l, Inc., 467 F.3d 514, 521 (6th Cir. 2006). Pursuant to these Rules, Defendant Rexon has moved to dismiss Plaintiff's complaint for deficiencies in both the process and the manner of service.

Rexon's deficiency in process allegation under Rule 12(b)(4) stems from the fact that in the summons, Plaintiff identified Rexon's address as 684 Huey Road, Rock Hill, SC 29730. According

---

[1] In its motion, Rexon originally argued that this Court lacks personal jurisdiction over it. However, Rexon later withdrew that portion of its motion. (See Def. Rexon Indust. Corp.'s Not. of Partial Withdrawal of its Mot. to Quash Summons &/or Mots. to Dismiss Pursuant to FRCP 12 [DN 31].) Accordingly, the Court will limit its discussion to Rexon's claims under Rules 12(b)(4) and 12(b)(5) as to the sufficiency of process and the sufficiency of service of process.

to Rexon, this corporate address is actually PTS's principal place of business, and Plaintiff's use of the improper address renders process insufficient. However, Rexon fails to point to any part of Rule 4, or any case, which states that using an improper address renders the form of process insufficient. Thus, the Court finds that Plaintiff complied with Rule 12(b)(4). The question then becomes whether the manner of service was sufficient under Rule 12(b)(5). To answer this question, the Court must turn its attention to Rule 4(h).

Rule 4(h) prescribes the manner in which service is to be effectuated on corporate defendants. The Rule is divided into two categories: the first of which is applicable when service is made within a U.S. judicial district and the second of which is applicable when service is made outside of a U.S. judicial district. See Fed. R. Civ. P. 4(h). In this case, Rexon broadly asserts that the Court must look to the second category and effectuate service "in any manner prescribed by Rule 4(f) for serving an individual . . . ." Fed. R. Civ. P. 4(h)(2). Rule 4(f) provides that a foreign corporation may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>> (C) unless prohibited by the foreign country's law, by:
>>> . . .
>>> (ii) using any form of mail that the clerk addresses and sends to the individual that requires a signed receipt; or
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). Here, it is undisputed that Taiwan is not a signatory to any international treaty

3

governing service of process. Sayles v. Pac. Eng'rs & Constructors, Ltd., 2009 WL 791332, at *2 (W.D.N.Y. Mar. 23, 2009). Thus, Rule 4(f)(1) does not apply. Likewise, it is undisputed that the Court has not ordered service in any particular manner. Thus, Rule 4(f)(3) does not apply. As such, Rexon argues that the Court must look to Rule 4(f)(2) and require service through the use of a letter rogatory. In support of this argument, Rexon highlights that the U.S. Department of State has advised that "if enforcement of a judgment is anticipated . . . Taiwan may not consider service by registered mail or agent acceptable and may require service be effectuated pursuant to a letter rogatory." (See Dep't of State Circular [DN 12-4] 1.) A letter rogatory must include an offer of reciprocal assistance, as well as a statement expressing the requesting court's willingness to reimburse the Taiwan judicial authorities for incurred costs. It also must be in English, with translations in Mandarin Chinese. (Id.)

The Court finds, however, that Rexon is incorrect to assume that the second category applies. Instead, since service was made within a U.S. judicial district, the Court must turn to the first category to determine whether the manner of service was sufficient. Under the first category, service may be effectuated on a foreign corporation in two ways. First, service can occur "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) states that service can be effectuated by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).[2] Second, service can occur by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment

---

[2] Under Kentucky law, a corporation can be served through "an officer or managing agent thereof, or the chief agent in the county wherein the action is brought, or any other agent authorized by appointment or by law to receive service on its behalf." Ky. R. Civ. P. 4.04(5).

4

or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B).

In this case, Plaintiff has not argued that PTS was Rexon's officer or managing agent—nor has he argued that PTS was authorized by appointment to receive service of process. Instead, while somewhat difficult to discern, Plaintiff seems to suggest that PTS, as Rexon's domestic subsidiary, qualifies as Rexon's agent by law and is thus authorized to receive service of process on Rexon's behalf. For the following reasons, the Court agrees.

As a general rule, a "foreign corporation is amenable to process to enforce a personal liability . . . only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there. And even if it is doing business within the state, the process will be valid only if served upon some authorized agent." Philadelphia & R. Ry. Co. v. McKibbin, 243 U.S. 264, 265 (1917). While the Sixth Circuit does not appear to have explained who qualifies as an authorized agent under federal law, several federal courts have held that a subsidiary "may be found to be a parent corporation's agent at law for service of process . . . where the evidence shows that one is the agent or alter ego of the other." Delta Constructors, Inc. v. Roediger Vacuum, GmbH, 259 F.R.D. 245, 249 (S.D. Miss. 2009).[3] This Court now joins those courts in concluding that the nature of the relationship between a foreign parent corporation and a domestic subsidiary can cause

---

[3] See, e.g., Sheets v. Yamaha Motors Corp., U.S.A., 891 F.2d 533, 536 (5th Cir. 1990) (observing that "as long as a foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one, process can be served on a foreign corporation by serving its domestic subsidiary—without sending documents abroad"); Lisson v. ING GROEP N.V., 262 Fed. App'x 567, 570 (5th Cir. 2007) (noting that with respect to foreign defendants, "even if a domestic subsidiary is not explicitly authorized by its foreign parent corporation as an agent for service, the subsidiary might still be capable of receiving such service"); Blades v. Ill. Cent. R. Co., 2003 WL 1193662, at *2 (E.D. La. Mar. 12, 2003) (holding that "where the subsidiary is the agent or alter ego of the parent, service upon the subsidiary can be effective against the parent").

the subsidiary to become the corporation's agent by law for the purpose of service of process.

With this in mind, the Court must next analyze the specific facts of this case and determine whether Plaintiff has put forth sufficient evidence showing that PTS is authorized to receive service for Rexon. The Court finds that he has. In this case, Plaintiff has submitted copies of documents in which Rexon has admitted that it does business in the United States as PTS. (See Dep. Transcript of George Ku [DN 30-5] 80–81 (essentially conceding that Rexon and PTS are intertwined and that PTS acts as its U.S. subsidiary).) Plaintiff has also submitted documents from other cases in which Rexon has admitted that it can be served through PTS. See, e.g., Walters v. Sears, Roebuck & Co., No. 3:06-CV-48 [DN 30-2] ¶ 4, [DN 30-4] ¶ 4 (S.D. Miss. 2006); Pemberton v. Rexon Indust. Corp., DN 6:12-CV-802 [DN 30-27] ¶ 2 (M.D. Fla. 2012). At one time, Rexon USA and PTS were located in the same building in Connecticut. (See Def. Rexon's Reply to Pl.'s Resp. to Mot. to Quash Summons [DN 34] 6.) Moreover, a page on Rexon's website indicates that PTS is Rexon's branch or office in the United States. (Website [DN 30-8].) Further, PTS has stated in court filings that Rexon owns stock in PTS, that PTS is responsible for handling returns of defective Rexon products, and that calls placed by the end-users of Rexon's products are directed to PTS. (Def. Power Tool Specialists, Inc.'s Mot. to Dismiss [DN 30-9] 4, 5.) The Court finds that these facts sufficiently show that PTS and Rexon are closely intertwined such that service of process on Rexon can be made by serving PTS.

Rexon argues that despite these facts, it does not have a close enough connection with PTS such that service of process on it can be made by serving PTS. In support, Rexon first suggests that the fact that it owns PTS stock is not proof that it has transacted business in South Carolina so as to avail itself of being served there. See Peterson v. Chicago, R.I. & P.R. Co., 205 U.S. 364, 391–94

(1907) (holding that the ownership by a foreign railway company of a controlling interest in the stock of a domestic railway company does not make the foreign corporation liable to service of process in the state). However, the Court finds that in this case, there are facts in addition to Rexon's stock ownership which show a sufficiently close relationship between the companies to justify service of process on Rexon through PTS. Next, Rexon suggests that PTS is a "separate and distinct" entity, as it provides after-purchase service to purchasers of Rexon's products. According to Rexon, PTS has no bearing on the manufacture, design, distribution, or sale of its products. But the Court finds that this argument is unpersuasive. Contrary to Rexon's assertion, the facts clearly show that the entities are far from being "separate and distinct." At least two other courts have reached the same conclusion.

In <u>Yang v. Rexon Industrial Corp.</u>, a plaintiff in a similar product liability case served Rexon by serving PTS in South Carolina. Like it did in this case, Rexon moved to quash the summons, asserting that service on PTS was not proper since Rexon and PTS are separate corporations, PTS is not its registered agent, and service was not made by delivering a letter rogatory with a translated copy of the complaint. No. 1:10-CV-00251 [DN 30-14] (E.D. Va. 2006). The Eastern District of Virginia rejected these arguments, concluding that "service of process was served properly on an agent who was authorized to receive service." [DN 30-15]. More recently, in <u>Fountain v. Rexon Industrial Corp.</u>, the Northern District of Florida denied Rexon's motion seeking to quash a service of summons on PTS. No. 3:12-CV-00123 [DN 30-28] (N.D. Fla. 2013). In so doing, the Court detailed the evidence supporting a finding of agency, noting:

> In support of his position that the requisite agency relationship exists, the plaintiff submitted copies of documents in which Rexon has admitted that it does business in the United States as PTS. Specifically, the plaintiff submitted copies of deposition transcripts in which Rexon's Sales Director, George Ku, essentially conceded that

7

> Rexon and PTS are intertwined with PTS acting as Rexon's "marking and sales department." Bob James testified similarly that PTS' primary function is to act as a sales and service center for Rexon tools. According to Ku, PTS receives calls to Rexon's customer service hotline and maintains records of such calls, providing them to Rexon on a quarterly basis so that Rexon's quality assurance manager may review them. PTS' officers also participate in the decision making process at Rexon, including decisions regarding safety technology and marketing. And Rexon and PTS are jointly responsible for developing new products. At one time, Rexon USA and PTS were located in the same building in Connecticut.

Id. at 4–5. The same evidence is presented here. Accordingly, the Court holds that PTS is Rexon's agent by law. Plaintiff has shown that Rexon exercises sufficient control over PTS.

The Court's position follows other district court cases within the Sixth Circuit. In Sunbeam Corp. v. Picard, the Sixth Circuit was asked to set aside a district court's adjudication that overruled a motion to dismiss. While the Court ultimately held that the action was not an appropriate one for it to consider, it did note that the district court had made "findings of fact showing multitudinous activities of the subsidiary on behalf of its parent," from which it could conclude that the subsidiary "was actually Sunbeam itself, or, at least, an agent thereof, so that service of process on the subsidiary amounts to service on Sunbeam . . . ." 227 F.2d 596, 597 (6th Cir. 1955). Thus, while the Sixth Circuit did not specifically rule as to whether the district court was correct in making this finding, the case indicates that district courts within the Sixth Circuit have authorized service on parent corporations through their subsidiaries.

The Court's position is also supported by Kentucky law. As indicated above, service may be effectuated on a foreign corporation by following state law for serving a summons. Kentucky's long-arm statute is found in KRS § 454.210. Under this statute, when personal jurisdiction is authorized, "service of process may be made on such person, *or any agent of such person*, in any county in this Commonwealth, where he may be found . . . ." KRS § 454.210(3)(a) (emphasis

8

added). While it is true that Kentucky courts do not appear to have defined the statutory term "agent," it is also true that several courts in other jurisdictions have indicated that one corporation can be an agent for another. See, e.g., Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398 (9th Cir. 1994) (holding that a Washington corporation could be the general agent of a foreign corporation); Zisman v. Sieger, 106 F.R.D. 194 (N.D. Ill. 1985) (noting that an Illinois corporation was a Japanese corporation's agent for service of process). Thus, the Court finds that PTS could be—and was—Rexon's agent. As such, PTS was authorized by law to accept service on Rexon's behalf.[4]

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Rexon's Motion to Quash Summons and/or Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12 [DN 12] is **DENIED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

May 6, 2013

cc: counsel of record

---

[4] The Court notes that Rexon cites Missouri-Kansas Pipe Line Co. v. Hobgood for the proposition that under Kentucky law, a foreign corporation "cannot be brought into court by the service of summons upon the agent of another corporation simply because the latter was a subsidiary or controlled company." 51 S.W.2d 920, 921 (Ky. 1932). However, the Court reiterates that in this case, there are facts in addition to the parent-subsidiary relationship justifying the finding of an agency relationship. Thus, Rexon's argument is without merit.