UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:13-CV-00005-GNS-HBB

DAVID ALEXANDER MOORE                                                                                   PLAINTIFF

V.

LOWE'S COMPANIES, INC.;
L.G. SOURCING, INC.;
REXON INDUSTRIAL CORP.;
POWER TOOLS SPECIALISTS, INC.; and
LOWE'S HOME CENTERS, LLC                                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 85), Motion for Partial Summary Judgment (DN 86), and Motion to Exclude Plaintiff's Experts (DN 87). The motions have been fully briefed by the parties and are ripe for adjudication. For the reasons outlined below, the Motion for Summary Judgment and Motion for Partial Summary Judgment are **GRANTED**, and the Motion in Limine is **GRANTED IN PART** and **DENIED IN PART**.

### I.   SUMMARY OF FACTS AND CLAIMS

On January 22, 2012, Plaintiff David Alexander Moore ("Moore") suffered severe injuries while operating a Task Force brand table saw, Model No. BT2500W, Item No. 229647, which was purchased from Defendants in 2008. (Compl. ¶ 9, DN 1; Moore Dep. 68:16-69:18, Nov. 3, 2014, DN 87-5). Prior to the accident, Moore had removed the guard from the table because he believed the anti-kickback feature of the table saw impeded the feeding of wood into the saw. (Moore Dep. 74:5-75:19). While Moore was ripping a board at a 45-degree angle, the

1

board kicked back causing his left hand to come into contact with the spinning blade. (Moore Dep. 122:18-126:7). As a result of the accident, Moore's left index finger was amputated at the first knuckle from the palm side, and his middle finger was cut on the side and top. (Moore Dep. 130:1-13).

Moore filed this lawsuit against Defendants alleging claims of strict product liability, negligence, and breach of implied warranty of merchantability. (Compl. ¶¶ 21-31). Plaintiff has retained Kerry Mehler ("Mehler") and Darry Robert Holt ("Holt") to testify as expert witnesses in this matter.

## II. JURISDICTION

This Court has original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). The parties in this action are diverse, and the amount in controversy exceeds the jurisdictional limit of the Court. (Compl. ¶¶ 1-2, 4-6, 8).

## III. DISCUSSION

### A. Motion for Summary Judgment and Motion for Partial Summary Judgment

Defendants Lowe's Home Centers, LLC; L.G. Sourcing, Inc.; and Lowe's Companies, Inc. have moved to dismiss all of Plaintiff's claims asserted against them due to Kentucky's middleman statute, KRS 411.340. (Defs.' Mot. for Summ. J. 1, DN 85). In addition, Defendants seek summary judgment on the claim of a breach of implied warranty of merchantability claim due to the expiration of the applicable statute of limitations, KRS 355.2-725(1). (Defs.' Mot. for Partial Summ. J. 1, DN 86). Both of those motions are unopposed. (Pl.'s Resp. to Mot. for Summ. J. 1, DN 96; Pl.'s Resp. to Mot. for Partial Summ. J. 1, DN 95). Accordingly, both

motions will be granted, and the only remaining claims in this matter are being asserted against Rexon Industrial Corp. and Power Tools Specialists, Inc. (hereinafter "Defendants").

### B. Defendants' Motion to Exclude Plaintiff's Experts

Defendants move to exclude Mehler's testimony in part and Holt's testimony in its entirety. (Defs.' Mem. in Supp. of Mot. in Lim. 12-29, DN 87-1). Federal Rule of Evidence 702 permits the use of technical or specialized knowledge where it will assist the trier of fact to determine a fact in issue. As a prerequisite, the evidence must meet the following criteria:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)-(d). *See also* Fed. R. Evid. 702, Advisory Comm. Note to 2000 Amendment ("[N]o single factor is necessarily dispositive of the reliability of a particular expert's testimony.").

Under this rule, the trial judge is the gatekeeper to ensure that expert testimony satisfies the requirements of reliability and relevance. *See Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 407 (6th Cir. 2006) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)). As the Sixth Circuit has further noted:

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies *529 three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable.

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008) (citing Fed. R. Evid. 702).

      1.    *Holt*

Defendants seek to exclude Holt's testimony on the basis that his opinions are unreliable and do not qualify as valid expert opinions.[1]  (Defs.' Mem. in Supp. of Mot. in Lim. 13-29). They also argue that Holt's opinions are not trustworthy or based upon "the type and kind of information relied upon by other experts in Mr. Holt's field." (Defs.' Mem. in Supp. of Mot. in Lim. 21).

      a.    **Qualifications**

Holt earned a bachelor's of science degree in mechanical engineering from Purdue University in 1963, and a law degree from Suffolk University Law School in 1969. (Holt Decl. Ex. 1, at 1, DN 94-2).  He is a registered professional engineer and licensed to practice law in Massachusetts. (Holt Decl. Ex. 1, at 1).  Holt has held a variety of positions in the engineering field since the early 1970s and by his count, he has "approximately 40 [years'] experience as a consulting engineer evaluating the safety design and condition of hundreds of machines and products of all types, including table saws." (Holt Decl. Ex. 1, at 1; Holt Decl. ¶ 3, DN 94-1; Holt Expert Report 1, DN 87-13).  Holt also estimates that he has "spent 4,000 hours over the past eleven (11) years investigating and testing SawStop saws and investigating the subject and other table saws, both by inspecting the saws themselves and by reviewing design and other documents."  (Holt Supplemental Report 1, DN 87-9).  Holt has "practical experience in carpentry and with woodworking tools, including table saws, having built or supervised personal house additions and house construction." (Holt Decl. ¶ 3).  He has also been an expert in other cases involving table saws. (Holt Decl. ¶ 3).

---

[1] Defendants do not challenge the relevance of Holt's testimony.

In evaluating Holt's qualifications, the Court should consider his "full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 717 (7th Cir. 2000). Holt's education and experience outlined above are sufficient to qualify him to render expert testimony regarding the issues in this case.

In challenging Holt's qualifications, Defendants argue that Holt is a hired gun. (Defs.' Mem. in Supp. of Mot. to Exclude Testimony 14). While a court must "ensure that it is dealing with an expert, not just a hired gun," this Court believes that Plaintiff has demonstrated that Holt has pertinent educational and professional experience, particularly his experience investigating issues concerning table saw safety. *See Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996). The motion will be denied as to Holt's qualifications.

**b.  Reliability**

Defendants also argue that Holt's testimony should be excluded because his opinions and methodology are unreliable under Fed. R. Evid. 702 and 703. Defendants assert that Holt should be precluding from testifying that "it was technically feasible to incorporate flesh technology into the subject saw by 2007." (Defs.' Mem. in Supp. of Mot. in Lim. 14). In addition, they maintain that Holt is unqualified to testify on the issue of economic feasibility and that his opinions fail under both rules. (Defs.' Mem. in Supp. of Mot. in Lim. 14-15).

"Rule 702 directs courts to focus on the reliability of expert testimony, rather than the 'credibility and accuracy' of that testimony." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 323 (6th Cir. 2015) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529). In relevant part, Rule 703 states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field

5

>would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Fed. R. Evid. 703.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993), the Supreme Court identified a non-exhaustive list of factors a trial court may consider in evaluating an expert's proposed testimony. These factors include:

>(1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community."

*Brooks v. Caterpillar Glob. Mining Am., LLC*, No. 4:14-CV-00022-JMH, 2016 WL 276126, at *2 (W.D. Ky. Jan. 21, 2016) (quoting *Daubert*, 509 U.S. at 592-94).

In general "[e]xperts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (second alteration in original) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)). "[A] trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 445 (6th Cir. 2012) (internal quotation marks omitted) (alteration in original) (quoting *Kumho Tire*, 526 U.S. at 152). As the Sixth Circuit has noted, "mere 'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.'" *McLean v. 988011 Ont., Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000) (citation omitted).

In this case, Plaintiff has retained Holt to testify regarding the existence of feasible alternative designs to the Task Force table saw at issue here. As this Court has noted regarding Kentucky law in defective design cases:

> In specifically addressing a design defect case, the Kentucky Supreme Court has stated:
>
>> A plaintiff in Kentucky can bring a defective design claim under either a theory of negligence or strict liability. The foundation of both theories is that the product is 'unreasonably dangerous.' . . . So under either theory, it is the legal duty of a manufacturer to use reasonable care to protect against foreseeable dangers. In a design defect case courts use some form of risk-utility analysis to assess the decisions made by manufacturers with respect to the design of their products.
>
> *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 535 (Ky. 2003). The risk-utility analysis balances the available alternative designs with the risk of the chosen design. Relevant factors in this analysis include the usefulness of the product, the probability it will cause injury and "the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility." Kentucky law states that all products liability actions, "regardless of whether the case involves failure to adequately warn, defective design or other products liability theories, [require proof that] the product is defective." In sum, in order to prove a defective design, Plaintiff must show that the design is unreasonably dangerous under a risk-utility analysis.

*Hopkins v. Ford Motor Co.*, No. 1:07-CV-00068, 2011 WL 5525454, at *2 (W.D. Ky. Nov. 14, 2011) (internal citations omitted).[2]

In support of their motion, Defendants attack the methodology Holt used in formulating his opinions and argue:

---

[2] To prove a claim of defective design under Kentucky law, a plaintiff must present proof of a feasible alternative design. *See Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004). In other jurisdictions, however, the feasibility requirement is bifurcated into technological feasibility and economic feasibility. *See, e.g., Edwards v. Techtronic Indus. N. Am., Inc.*, No. 3:13-cv-01362-SI, 2015 WL 3616558, at *4 (D. Or. June 9, 2015). Many of the cases cited by the parties relating to these witnesses are from other jurisdictions that impose this two-pronged requirement for feasibility. The Court, however, has been unable to find any Kentucky case law following that approach.

> Mr. Holt has testified that he has not inspected or examined the Table Saw owned by Mr. Moore in this case. As Mr. Holt has not seen or examined the Table Saw, he also failed to take any photographs. He has not talked with Mr. Moore about the problem that occurred on the date of the accident and has no intention of doing so.

(Defs.' Mem. in Supp. of Mot. in Lim. 13 (internal citations omitted) (citation omitted)). Based upon the Court's review of Holt's Expert Report and Supplemental Report, Holt has adequately articulated the methods he used in formulating his opinions that table saw in question has design defects. Holt has opined that one of the problems with this table saw—like many others in the industry—is that the safety guards interfere with the visibility of the user, encouraging users to remove the guards. (Holt Expert Report 8).

The Court disagrees with Defendants' characterization of Holt's testimony with respect to the formulation of his opinions. In his deposition, Holt testified that he had a conference call with Plaintiff and others on April 30, 2014, to find out what occurred on the date of the accident. (Holt Dep. 34:14-39:18). Defendants' characterization is further undermined by Holt's expert report, in which he identified the preparatory work upon which he formulated his opinions, consisting of:

1. Discussions with Mr. Moore on April 30, 2014.
2. [His] inspections of Rexon saw models similar to the subject saw on August 20, 2009 and October 28, 2011.
3. Photographs of the subject table saw.
4. Review of the operating manual and parts list for the subject model saw.
5. Examination and testing of a Bosch 4100 table saw equipped with a modular guard assembly in conformance with UL 987, 2007 on August 22, 2007, and examination of other manufacturers' modular guard assemblies since 2007 including Ryobi; Rigid, Skil, Delta, Dewalt, and Makita.
6. Visits to the SawStop, LLP facilities in Oregon on July 6, 2004, November 1 & 2, 2005, May 9, 2008, and June 21, 2012 to observe a table saw equipped with SawStop's recent innovative safety device, and discussions with Messrs. Stephen Gass and David Fanning of SawStop.
7. Testing and evaluation on May 25, 2005 and June 25 & 26, 2008 of a contractor's model table saw prototype equipped with SawStop's

> innovative safety device provided to the writer, and testing and evaluation of a 2008 SawStop cabinet model table saw on June 25 & 26, 2008, and August 11 & 12, 2008.
> 8. Discovery documents and deposition transcripts with Exhibits as listed in Appendix 3.
> 9. Collection of PTI Documents from 9/21/00 thru 1/14/09 assembled by Boies, Schiller & Flexner LLP from documents produced in various table saw actions.
> 10. Engineering Handbook Standards and Treatises as listed in Appendix 4.
> 11. Documents produced by defendants in this action and by other defendants in other table saw actions.
> 12. [His] inspection at SawStop on June 21, 2012 of SawStop's bench top table saw prototype equipped with SawStop's flesh[-]detection and reaction technology as found on their larger saws produced since 2004.
> 13. [His] inspection of a PTI J.V. patterned bench top table saw prototype equipped with flesh[-]detection and reaction technology on June 22, 2012.
> 14. [His] attendance at, and participation in, an inspection and testing of a SawStop contractors saw with a proposed finger surrogate at UL's facilities in Northbrook, Illinois on March 25, 2014.

(Holt Expert Report 2). By his supplemental report, Holt also outlined his investigation of flesh-detection technology. (Holt Supplemental Expert Report 2-4). Additionally, Holt's expert opinions appear to be tailored to this particular table saw and design issues associated with this saw and similar designs.

In determining the feasibility of incorporating flesh-detection technology into table saws, Holt stated that he did the following:

> On May 21-24, 2015, I personally inspected and analyzed a production model SawStop jobsite saw and compared its component parts to four other popular consumer table saws: (1) the Ryobi RTS10G model saw; (2) the Dewalt 744 Type 2 table saw; (3) the Bosch 4100-09; and (4) the Ridgid R4513 (collectively, the "comparison saws."). I examined and photographed the internal components to compare their functional design principles. This analysis confirms that incorporating flesh detection into a bench top saw is not difficult, does not fundamentally change the nature, form, or function of the saw, and has been feasible since 2002.

9

(Holt Decl. ¶ 208). Holt noted that all of the studied table saws use the same basic design. Holt Decl. ¶ 209). Addressing the modifications that would be required to implement flesh-detection technology into similar table saws, Holt explained:

> 211. First, in order to accommodate a flesh detection system like SawStop on a bench top saw, the hollow plastic bases need to have larger, usable hollow cavities, primarily an increase in height of 3"-5" and an increase in both the other two dimensions (side to side and fore and aft) at full height. From a manufacturing perspective, this would require some additional resin, an insignificant cost that would add negligible weight to the saw. Further, such an increase of the central hollow cavities would not increase the overall footprints of the saws, just the usable space in the cavities. In other words, this change would not significantly impact the form of a bench top saw, and it has certainly been feasible to make this change to a bench top saw since 2002.
> 212. Second, in addition to increasing usable cavity volume, the components and fasteners used to attach the brake to the mounting plate and the mounting plate to the underside of the table as well as to the arbor will have to be strong enough to withstand the braking and dropping forces. Selection of the components' material and size can be made by performing a stress analysis, an engineering tool utilized in the design of any product. This was something that could have easily been done in 2002. Visual comparison of these components on the SawStop saw to those on the other models suggests that it was not a major obstacle to strengthen the SawStop jobsite saw to accommodate flesh detection. The analysis should also determine if there is an imbalance in moments [sic] which would tend to tip over the saw during braking and, if so, adjustments can easily be made to the weight distribution and base dimension, design steps similar to adding a counterweight and stabilizer. Again, this is something engineers routinely do and could have easily been done in 2002.

(Holt Decl. ¶¶ 211-212). Based upon Holt's education, experience, and study of table saw designs and flesh-detection technology, his opinions possess a sufficiently reliable basis.

Likewise, Defendants argue that Holt's opinions regarding the implementation of the flesh-detection technology are *ipse dixit* of Dr. Stephen F. Gass, the inventor of the technology. (Defs.' Mem. in Supp. of Mot. in Lim. 16). As the Supreme Court has noted:

> [N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and opinion offered.

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (citing *Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992)). The Court, however, disagrees with this characterization. Based upon review of Holt's testimony and reports, the Court finds that Holt is qualified to testify as to the feasibility of the SawStop technology as it relates to Plaintiff's product liability claim. *See also Wood v. Robert Bosch Tool Corp.*, No. 4:13CV01888 TCM, 2015 WL 5638040, at *13 (E.D. Mo. Sept. 24, 2015) (finding that Holt was qualified to testify as to whether it was feasible to incorporate the flesh-detection technology into a Skil Model 3305 table saw). Along with Holt's education and experience in mechanical engineering, he has reviewed and tested saws using the flesh-detection technology as well as table saws that lack the technology. The Court finds that Holt is qualified to testify regarding the feasibility of such technology.

To the extent that there is any gap in Holt's qualifications or knowledge, that issue goes to the weight, not the admissibility of his opinions. *See Faughn v. Upright, Inc.*, No. 5:03-CV-000237-TBR, 2007 WL 854259, at *4 (W.D. Ky. Mar. 15, 2007) (quoting *Robinson v. GEICO Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006)). As one court has noted:

> At all times when scrutinizing the reliability and relevance of expert testimony, a court must remain mindful of the delicate balance between its role as a gatekeeper and the jury's role as the ultimate factfinder. A [trial] court's "gatekeeper role . . . is not intended to supplant the adversary system or the role of the jury." "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are traditional and appropriate means of attacking shaky but admissible evidence." A court may not "evaluate the credibility of opposing experts or the "persuasiveness of competing scientific studies"; instead, its duty is limited to "ensur[ing] that the fact-finder weighs only sound and reliable evidence." In close cases involving testimony of debatable reliability, this Court chooses to err in favor of admitting the testimony and allowing opposing counsel to draw out any weaknesses through cross-examination.

*Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1351-52 (M.D. Ga. 2007) (internal citations omitted) (second alteration in original). *See also Michaels v. Mr. Heater, Inc.*, 411 F. Supp. 2d

11

992, 998 (W.D. Wis. 2006) (noting that any flaws in the expert witness's procedures are issues of credibility, not qualification); *Talmage v. Harris*, 354 F. Supp. 2d 860, 868 (W.D. Wis. 2005) ("Although defendants' attacks on Kleinheinz's assumptions and computations appear to have merit, such arguments go to the weight and credibility of Kleinheinz's opinions, not their admissibility."). Thus, Defendants may attack Holt's opinions through vigorous cross-examination at trial.

For these reasons, Holt's opinions are sufficient reliable to survive Defendants' motion. Accordingly, the Court will deny the motion.

### 2. *Mehler*

With respect to Mehler, Defendants request that the Court exclude his testimony on the limited topics of SawStop or flesh-detection technology. (Defs.' Mem. in Supp. of Mot. in Lim. 12). While Plaintiff discussed Mehler's credentials in his response, he did not specifically address whether Mehler's testimony should be limited on those issues.[3] (Pl.'s Resp. to Mot. in Lim. 35-37). As a result, Plaintiff has waived any argument that he could have raised in opposing the motion to exclude Mehler's testimony on this limited basis. *See Houchins v. Jefferson Cty. Bd. of Educ.*, No. 3:10-CV-147, 2013 WL 811723, at *3 (E.D. Tenn. Mar. 5, 2013) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Thus, the Court will grant the motion and exclude any expert opinions by Mehler on the limited areas of SawStop and flesh-detection technology.

---

[3] Defendants indicate the parties have stipulated to this limitation on Mehler's testimony and cite to Exhibit H. (Defs.' Mem. in Supp. of Mot. in Lim. 12). The Court has not been able to locate any stipulation in that exhibit.

## IV. CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Summary Judgment (DN 85) and Defendants' Motion for Partial Summary Judgment (DN 86) is **GRANTED**; and

2. Defendants' Motion to Exclude Plaintiff's Experts (DN 87) is **GRANTED IN PART** and **DENIED IN PART**.

**Greg N. Stivers, Judge**
**United States District Court**
March 25, 2016

cc: counsel of record